1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
7                                      AT SEATTLE

8    LOUIS ANTHONY LAGOIS,

9                          Plaintiff,              Case No. C11-1465-JCC-BAT

10              v.                                 **REPORT AND**
                                                   **RECOMMENDATION**
11   MICHAEL J. ASTRUE, Commissioner of
     Social Security,
12
                           Defendant.
13

14        Louis Anthony Lagois seeks review of the denial of his Disability Insurance Benefits

15   applications.  He contends that the ALJ erred by (1) finding that Mr. Lagois could perform his

16   past relevant work; (2) failing to consider Mr. Lagois's obesity; (3) discounting Mr. Lagois's

17   credibility; and (4) failing to reopen Mr. Lagois's prior claim.  Dkt. 11.  Mr. Lagois also

18   contends the Appeals Council erred in rejecting his new evidence.  *Id*.  As discussed below, the

19   Court recommends the case be **REVERSED** and **REMANDED** for further administrative

20   proceedings.

21                    I.        **FACTUAL AND PROCEDURAL HISTORY**

22        Louis Lagois is currently 70 years old, has completed at least four years of college, and

23

REPORT AND RECOMMENDATION - 1

1  has worked as an electrical engineer for a municipal utility.[1]  Mr. Lagois first applied for benefits

2  on August 23, 2005, alleging disability as of March 17, 2004.  Tr. 145-49.  He was denied

3  benefits on February 2, 2006.  Tr. 72.  He reapplied for benefits on January 21, 2007, (Tr. 16-72)

4  and was denied benefits again on March 27, 2007.  Tr. 81.  He appealed for reconsideration and

5  was denied benefits at the reconsideration level.  Tr. 87.  The ALJ conducted hearings on

6  October 2, 2009, and February 22, 2010, finding Mr. Lagois not disabled.  Tr. 9-50.  As the

7  Appeals Council denied Mr. Lagois's request for review after reviewing additional evidence, the

8  ALJ's decision is the Commissioner's final decision.  Tr. 1-7.

9  ## II.    THE ALJ'S DECISION

10  Utilizing the five-step disability evaluation process,[2] the ALJ found:

11  **Step one:**  Mr. Lagois had not engaged in substantial gainful activity during the period of his alleged onset date of March 17, 2004, through his date last insured of June 20, 2007.

12  **Step two:**  Mr. Lagois had the following severe impairments: sleep apnea, urinary

13  incontinence, arthritis of the knee, and degenerative disc disease.

14  **Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[3]

15  **Residual Functional Capacity:**  Mr. Lagois had the residual functional capacity to

16  perform light work except that he can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  Additionally, he can never climb ladders, ropes, or

17  scaffolds and must have a readily accessible bathroom.

18  **Step four:**  Mr. Lagois could perform his past work as an electrical engineer, and is not disabled.

19  Tr. 54-63.

20

21

22

23

---

[1] Tr. 145, 175, 295.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

### III.    DISCUSSION

**A.    The ALJ Erred in Finding, Without Any Accompanying Factual Findings, that Mr. Lagois Could Perform His Past Relevant Work.**

The ALJ found that Mr. Lagois could perform his past work as an electrical engineer as actually performed.  Tr. 63.  Mr. Lagois argues that this finding is erroneous because the ALJ failed to "fully investigate and make explicit findings as to the physical and mental demands of [Mr. Lagois's] past relevant work and to compare those findings with what [Mr. Lagois] was capable of performing."  Dkt. 15 at 11:22-23.  The Commissioner argues that the ALJ's finding was supported by substantial evidence, namely the vocational expert's testimony.

But the vocational expert's testimony is not consistent with the ALJ's finding.  During the hearing, Mr. Lagois pointed out that the vocational expert had described the electrical engineer position to require lifting up to twenty pounds, even though Mr. Lagois was required to lift up to fifty pounds at his job.  Tr. 39-40.  Mr. Lagois also contended that his previous job was less sedentary than other engineering jobs because he traveled to different sites and worked at field locations.  Tr. 40.  To resolve the discrepancies, the ALJ explained his understanding that the vocational expert testified that Mr. Lagois could perform the work of an electrical engineer as it is generally performed, not how Mr. Lagois actually performed his work, and the vocational expert confirmed that understanding.  Tr. 40-41.  In his written decision, however, the ALJ found that Mr. Lagois was able to perform his job "as actually performed."  Tr. 63.

Furthermore, the vocational expert testified that Mr. Lagois would not be able to perform his past job or any other job if he needed to access a bathroom sixteen times during an eight-hour workday, as Mr. Lagois had described.  Tr. 36.  While there was some discussion of whether Mr. Lagois's urinary needs would continue at that rate in the future, even after he tried a new treatment, the ALJ did not address — either at the hearing or in the written decision — the effect

1    of Mr. Lagois's functional limitations on his past job during the time period at issue, or make any

2    findings to support his conclusion that Mr. Lagois could perform his past job.

3         Thus, because the ALJ's finding is inconsistent with the vocational expert's testimony

4    and because the ALJ did not address whether and how Mr. Lagois's functional limitations[4] could

5    be accommodated in his past relevant work, the Court finds that the ALJ's step-four finding

6    lacks proper foundation.  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1167 (9th Cir. 2008)

7    ("The ALJ always 'has a duty to make the requisite factual findings to support his conclusion' at

8    step four.  Otherwise, the court has no basis on which to review the agency's decision.") (quoting

9    *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)).  Accordingly, on remand the ALJ shall

10   reasses the step-four conclusion and, if necessary, proceed to step five.

11   **B.    The ALJ Did Not Err in Evaluating Evidence of Mr. Lagois's Obesity.**

12        Mr. Lagois contends that the ALJ erred by not finding Mr. Lagois's obesity to be an

13   impairment, despite the numerous obesity diagnoses in the record.  *See* Dkt. 11 at 14 (citing Tr.

14   648, 744, 745, 881, 913-14, 935-36, 959, 1009-10).  The Commissioner argues that the ALJ did

15   not need to address Mr. Lagois's obesity, because the record does not contain any evidence that

16   Mr. Lagois's obesity caused any functional limitations or exacerbated any of his other

17   impairments.  Dkt. 14 at 14.  In his reply brief, Mr. Lagois posits that his obesity "is a

18   detrimental factor in his sleep apnea thereby warranting a multiple impairment."  Dkt. 15 at 8.

19        Obesity is not a separate, listed impairment, but it can be considered in combination with

20   another impairment to determine whether, when viewed in the aggregate, the multiple

21   impairments are equivalent to a listed impairment.  *See* Social Security Ruling ("SSR") 02-1p

---

22   [4] Because the Court finds the ALJ's step-four analysis to be deficient and directs the ALJ to
23   reassess the step-four finding and make explicit findings to support his conclusions, the Court
     need not resolve whether the ALJ's step-four finding adequately considered the opinion of Dr.
     O'Neil Bains (Tr. 599) regarding Mr. Lagois's necessary work accommodations.

REPORT AND RECOMMENDATION - 4

(2002).  In *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005), the Ninth Circuit explained that an

ALJ's duty to consider the effect of multiple impairments is triggered by a claimant's

presentation of evidence to establish equivalence:

> An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.

> As [SSR 02-01p] explains, each case should be evaluated based on the record. The district court properly noted:

>> There was no evidence before the ALJ, and none in the record, which states that claimant's obesity limits her functioning.  Neither treatment notes nor any diagnoses addressed claimant's limitations due to obesity.  The medical record is silent as to whether and how claimant's obesity might have exacerbated her condition. Moreover, claimant did not present any testimony or other evidence at her hearing that her obesity impaired her ability to work.

> Even on appeal, [plaintiff] has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis.  In fact, the only evidence in the record relating to her obesity are notes from doctors who observed weight gain, indicated that [plaintiff] is obese, and recommended that she participate in a medically supervised weight loss program.  We therefore conclude that the ALJ did not commit reversible error by failing to consider [plaintiff's] obesity in determining whether she met or equaled the requirements of a listed impairment.

*Burch*, 400 F.3d at 682-83.  When a claimant is proceeding *pro se*, the ALJ has a heightened

responsibility to fully and fairly develop the record and explore all relevant facts.  *See Celaya v.*

*Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003).

Mr. Lagois argues that because he was unrepresented at the hearing, the ALJ had a

heightened responsibility to consider the effect of his obesity, in connection with his sleep apnea.

But there is no evidence anywhere in the record that any of Mr. Lagois's providers linked his

obesity with his sleep apnea, or that they (or anyone else) observed any functional limitations

resulting from his obesity, or that they (or anyone else) specified any particular limitations

related to his sleep apnea that were not addressed by the ALJ.  Thus, as in *Burch*, Mr. Lagois

"has not identified any functional limitations due to obesity which would have impacted the

ALJ's analysis."  400 F.3d at 683.  Accordingly, the Court finds that the ALJ was not required to

discuss the combined effect of Mr. Lagois's obesity on his other impairments, and thus the ALJ

did not err.

**C.      The ALJ Did Not Err in Discounting Mr. Lagois's Credibility.**

The ALJ discounted Mr. Lagois's credibility on several grounds.  The ALJ discounted

Mr. Lagois's description of the severity of his symptoms because he found that Mr. Lagois's

sleep-apnea and back-pain symptoms were alleviated or reduced with surgery and physical

therapy, respectively.  Tr. 62.  The ALJ also found that Mr. Lagois's urinary incontinence

impaired Mr. Lagois the most while he was on an all-liquid diet after jaw surgery, but that his

impairments became less severe with reduced fluid intake and improved pelvic strength.  Tr. 62.

Lastly, the ALJ cited the report of Dr. Fred E. Grovier, M.D., who treated Mr. Lagois on an

ongoing basis for urinary incontinence and noted evidence of malingering.  Tr. 62 (citing Tr.

553).  Dr. Grovier noted on April 5, 2005:

> I counseled the patient at this point that the first thing he needs to do is to cut his
> fluid intake at least in half.  Assuming he can pass an average of 240 cc per void,
> if we had normal fluid intake, his frequency would not be nearly as significant.
> Interestingly, the patient is very resistant to the fact that if he cuts his fluid intake
> his frequency will improve.  He seems convinced that he wants a surgical
> procedure and is very interested in the inner stem I had talked to him about last
> time.  I counseled him at this point that I clearly do not want to go to that
> direction with these types of volumes.  The patient wants to re-do a voiding trial
> and put down the fluid intake.  Unfortunately, I am not sure how reliable [a]
> historian he will be at this point as I am getting the feeling that he is looking for
> some type of disability from this condition.  I have counseled him that if he fills
> them out I will look at the sheet but at this point with these types of volumes and
> nothing that I think is urge incontinence, I am really not considering inner stem.

Tr. 553-54.  Mr. Lagois argues that this one treatment note is not sufficient evidence of

1    malingering, given that other physicians treated his urinary incontinence without suggesting that

2    Mr. Lagois was malingering.  *See* Dkt. 15 at 3.  The Commissioner contends that Dr. Grovier's

3    report is substantial evidence of malingering, such that the ALJ's adverse credibility finding is

4    justified.

5            Absent a finding that a claimant is malingering, an ALJ is required to provide clear and

6    convincing reasons to reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049

7    (9th Cir. 2001).  An ALJ does this by making specific findings supported by substantial

8    evidence.  "General findings are insufficient; rather, the ALJ must identify what testimony is not

9    credible and what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d

10   821, 834 (9th Cir. 1996).  But if there is affirmative evidence in the record that a claimant is

11   malingering, then the heightened "clear and convincing" standard does not apply.  *See Robbins v.*

12   *Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

13           The Court agrees with the Commissioner that Dr. Grovier's report constitutes affirmative

14   evidence of malingering.  Dr. Grovier specifically indicated that he believed Mr. Lagois was

15   seeking treatment and inaccurately reporting his symptoms for purposes of establishing a

16   disability, and the ALJ explicitly referred to that report in the decision.  Thus, the affirmative

17   evidence of Mr. Lagois's malingering supports the ALJ's adverse credibility finding.

18           Furthermore, the ALJ's other reasons for discrediting Mr. Lagois's testimony are

19   supported by substantial evidence.  The record shows that Mr. Lagois's sleep-apnea and back-

20   pain symptoms improved with treatment (Tr. 388-393, 564), and Mr. Lagois testified at the

21   hearing that both of those conditions had improved.  Tr. 24, 28.  Mr. Lagois also described a new

22   urinary-incontinence treatment that he was scheduled to try soon after the hearing, and that he

23   believed that solution would resolve some of the limitations caused by his incontinence.  Tr. 29.

1  The Court finds that this evidence supports the ALJ's findings that Mr. Lagois's symptoms are

2  not disabling.

3        Because the Court finds that the ALJ's adverse credibility finding is supported by

4  affirmative evidence of malingering and other substantial evidence in the overall record, the ALJ

5  did not err.

6  **D.**     **Some of Mr. Lagois's Assignments of Error are Moot or Incomplete.**

7        In Mr. Lagois's opening brief, he argues in his first assignment of error that the ALJ

8  constructively reopened Mr. Lagois's prior claim.  Dkt. 11 at 7.  Mr. Lagois also argues in the

9  alternative, in his second assignment of error, that if the ALJ did not constructively reopen the

10 prior claim, the ALJ violated Mr. Lagois's right to due process.  *Id*.  The Commissioner agrees

11 that the ALJ constructively reopened Mr. Lagois's prior claim, given that the ALJ adjudicated

12 the entire period at issue (March 17, 2004, through June 30, 2007).  In light of the parties'

13 agreement that the ALJ constructively reopened Mr. Lagois's prior claim, Mr. Lagois's first and

14 second assignments of error are moot.

15       Mr. Lagois also argued, in his seventh assignment of error, that new evidence presented

16 to the Appeals Council is included in the record on review, and the Commissioner does not

17 dispute that position.  *See* Dkt. 15 at 1.  The Appeals Council found that Mr. Lagois's new

18 evidence was not material because it reflected his condition after June 30, 2007, his date last

19 insured, and thus was not relevant to whether he was disabled before June 30, 2007.  Tr. 2.  Mr.

20 Lagois does not address this rationale, or explain why that rationale was erroneous.  Because Mr.

21 Lagois has failed to identify any source of error in the Appeals Council's decision, the Court

22 rejects this assignment of error.

23

REPORT AND RECOMMENDATION - 8

### III.     CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.

On remand, the ALJ should reassess the step-four finding in light of the entire record and provide explicit factual findings to support his or her conclusions.  If necessary, the ALJ shall enter a step-five finding.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **July 30, 2012.**  If no objections are filed, the matter will be ready for the Court's consideration on **August 3, 2012**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 16th day of July, 2012.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9